Please rise. This court is now in session. Please be seated. Thank you. We'll request to install the next case. 217-0055. Rodrigo Guerrero v. GKM. Do I have your seat? Counsel, you may proceed. Good morning. May I please, the court, my name is Deborah Burns. I represent Plaintiff Appellant Margarita Guerrero in these proceedings. Plaintiff requests that the commission's decision to deny compensation be reversed and amended to the commission with instructions to enter an award in favor of Plaintiff Pursuant to Sections 8A and 19B of the Act. The applicable standard of review is manifest weight of evidence. Section 19F1 of the Act gives the review in court power to review all questions of law and fact. And Section 19F2 allows review in court to set aside the commission decision. The commission's finding that there is no causal connection between Plaintiff's employment and her injury is contrary to the manifest weight of the evidence. The review in court has a duty to set aside the decision of the commission if it is clearly against the manifest weight of evidence or without substantial foundation, regardless of uncontroverted testimony sufficient to sustain it. The test to determine whether the commission decision is supported by the manifest weight of evidence is whether there is sufficient factual evidence in the record to support that decision. Plaintiff says not. Plaintiff maintains that the commission erroneously excluded two key pieces of medical evidence in order to reach its decision. First, it excluded Part 2 of treating physician Dr. Kenneth Schiffman's evidence deposition as to testimony, quote, relative to the medical issues presented, end quote. This erroneous ruling was an abuse of the commission's discretion. It prevented Plaintiff from sustaining her causation burden of proof. Is this Dr. Persky's deposition? This was on Dr. Schiffman. Well, let me understand something. As I understand the facts, you examined Schiffman and you terminated your examination. You were done with your direct examination. Is that correct? That's what the record says. In the beginning of the record, it also stated, Your Honor, that if additional records, because the chart was incomplete and it's on the record that Plaintiff reserved the right to continue examination. I didn't see any reservation of the right to continue your examination. I saw the examination as you examined him until a point in time when you were done examining him and tendered him to your opponent and the doctor turned around and said, Wait a minute, I can't stay here. I've got patients that I have to get to. And the agreement was it would be continued to the subsequent day to allow your opponent to cross-examine the man. And then when the subsequent day came, your opponent said, I had no questions on cross-examination, meaning you couldn't redirect him because it would exceed the scope of no cross. And that's what the commission said, that the arbitrator was wrong in overruling the objection. Your Honor, to try to redirect when there's no cross is kind of like checking and raising an account. You can get in big trouble for that. I agree, however, Plaintiff did reserve her right to re-examine Dr. Schiffman. And in addition, if additional records were produced immediately after deposition, I remained behind with the office manager. She pulled out additional records. I immediately demanded they be produced, sent a follow-up subpoena for those records. It took almost probably a year to get the complete records from that office. There were also conversations, though, on the record that counsel went back and forth where he said, well, who would pay for the additional time? So the questioning was based, at part two, on new materials that were produced that were not produced in response to the initial subpoena, which was lawfully served. So your position is you did legally, you did properly reserve the right to recall? My first position is yes, absolutely. If we can get to a more fundamental problem, which I hate to bring this up, but it seems to be a theme in your brief. On this issue, the alleged improper ruling regarding Schiffman's deposition testimony, could you please add to your brief any standards under which the challenge to the commission's ruling is reviewed or any legal authority to support their contentions? Would you do that? Would you provide any case law support and argument? We have that the – well, it was presented as a – You presented an argument, but you cited a legal authority. I mean, I stand on the case laws we've cited, but if your Honor feels that those are deficient. I think it's reference to the fact that you didn't cite any. What I – I guess the other part of this equation – Your Honor, I'm sorry, I can't respond to that question, but it was also disturbing that the commission endorsed self-serving and incompetent hearsay statements offered by Defendant's Counsel Brian Kaplan after Part 2 of Schiffman's deposition to be a basis to deny plaintiff's petition for penalties, which was the alleged ex parte conversation was a major issue in this case. And what proof was there of an ex parte? The proof was that two issues came up. When I initially scheduled Dr. Schiffman's evidence deposition, Part 1, shortly before it was scheduled to go, I received a call from his secretary saying Dr. Schiffman was rescheduling. In the meantime, Attorney Kaplan called me and said that he's letting me know – and I had not contacted him yet after his secretary called me – and he says, I'm letting you know that Dr. Schiffman's deposition was rescheduled. I said, I already knew that. How did you know? He's like, well, Dr. Schiffman told me that he's rescheduling deposition because he wants his money surges in before Obamacare. And then he sent me a letter to the same effect. And we went into extensive conversations and communications on this issue. I had to tell me about this – not that Dr. Schiffman said that he was trying to get his money surges in prior to Obamacare, but the fact that I ordered the deposition. Why was there any communication about this case outside the presence of – Let me ask your interpretation of an improper ex parte communication. I mean, it sounds like there was some discussion at a minimum about scheduling issues, but if it was related only to a scheduling issue at the doctor's convenience, is that an improper ex parte communication that affects anything? What it affects is that during Dr. Schiffman's testimony, he completely withdrew, reversed his medical opinions on causation without any basis. Okay, so you're making the inference that something must have occurred in the interim that would have changed opinions, even though there's no evidence in the record of what it was, right? Yes, I was trying to get to it. So he withdrew his opinions in the second half of the deposition, is that right? Part one, yes, and part two. And so by the commission sustaining the objection and striking part two, that benefits you? Part two, though, there was also questioning. I guess when taking as a whole is where I have a different opinion, but part two, Dr. Schiffman also added support to the case, and we felt that it should have been included, or then exclude Brian Kaplan's non-sworn statements, and for the commission just to consider the term, it just felt very biased. So after this interlude in which you're inferring there was some improper communication, you then in fact took the deposition of Dr. Schiffman, right? Yes. Okay. Did you, when you were thrown this curve where you say that he suddenly changed his opinion, did you cross-examine him? And whether or not there had been any discussions outside the record with the other counsel? Yes, Your Honor. Actually, with the subpoena also for the additional records, I also requested if there were any. I was actually looking to see was there any type of waiver from my client that would allow any just from a HIPAA point of view, but that said, as soon as I sent the subpoena, within two days my client receives a letter from Schiffman stating that he was leaving his orthopedics. And so I did have some questioning during part two, but it was at the very end of the conversation. He, again, Brian, he said he wants the truth to come out, and Brian Kaplan started talking about that there may have been a conversation. All I was trying to do was, what is it? And he said, I don't have to tell you. That's where it ended at. Wait, under no circumstances did I have to tell you? I'm confused about this issue. You're claiming it was an expiry of communication. You had the right to cross-examine him. I didn't think you didn't, or you did. I tried to. And he said what? There was no answer. Yeah, right. I have a couple of questions. This issue number five in your argument, which is the expiry of communication, there are no cases cited in this section either. In the prior section, number four, there's a heading with no argument or case citation. The only one that seems to, in this brief, that seems to have any case citation at all, is the third argument relating to no causal connection. The rule is clear. If there's no citation of authority, the issue is waived. So let's talk about the one about causation, because you do cite cases. The causation issue, Your Honor, again, along with Dr. Shipman, was the fact that Dr. Poperski's entire deposition was excluded from evidence. Three-and-a-half-hour deposition, the basis was that initially at his deposition, immediately before it began, I was handed over 500 pages of records that I had previously subpoenaed. So I did object, but at the same hand, when I took over this case, it was above the red line. So I knew that if I tried to continue the deposition, I was really at a risk. Trial was gone, so I needed an immediate objection. During deposition, I felt comfortable that I thought the cross-examination of Dr. Poperski went well. I thought it showed that the evidence that the commission relied upon was not credible, not reliable. The information he was given, he was admitted to many deficiencies in his own. If the commission sustained your objection to Dr. Poperski's deposition, you moved. Right. Did it bother you that the commission sustained that objection? It was bothering me. I would treat you to that, but I agreed that it be admitted after, because by then, by the end of the deposition, I felt it was very helpful to the case. So that's why I agreed to have it admitted into evidence. If you asked me to be bothered and agree to have it admitted, where is the error? It was excluded. The commission ultimately excluded the sustained objection that you made at the time of the deposition under Section 12, but found no error with respect to the admission of the examination report. That was the company's examining doctor, right? That's correct. So if you could tell me, how did the testimony help you? Because it showed all types of the timed motion study that the commission relied upon. It was not a document or a study that Dr. Poperski would typically rely upon seeing. He admitted to the evidence that was given to him for his opinions. He would have preferred other types of information, but he tied many opinions together. You made a point there, okay. But then the commission then, as I understand it, then decided, okay, maybe reviewing the ruling. In hindsight, didn't they then go through everything and say, having considered Dr. Poperski's testimony, we still come to the same conclusion? Didn't they specifically do that? That's what they said. Oh, that's what they said. But they gave no basis for that opinion, except that it was a way to reach their decision. I mean, it definitely, basically removing all of the testimony, I can almost imagine if it were not favorable testimony, it would have been admitted. My bigger concern was the fact that the IME, the reason I insisted on his deposition was I objected to it as a hearsay document. I would never agree to admit it without a cross-exam. So the reason I didn't object to the IME is I already agreed to have the deposition, and there was an attachment to the deposition. So that was a confusion. I said, wait, the admission was connected, or the agreement to allow it was based on also, of course, if I want this deposition, they're allowed to admit it. So that's where, again, perhaps it was my lack of clarity, but I thought it was already in as an attachment because that was prior to the IME itself. That's where that went with it. Your time is up. You'll have time in reply. Okay. Thank you. Thank you. Counsel, you may proceed. Good morning, Your Honors. May it please the court, counsel. My name is Matt Gorski, and I'm here on behalf of Respondent Appellee JKN Walter Sheed and Company. A little difficult one to say there. But I'm standing here today requesting that you affirm the decision of the commission as the decision was not against the manifest weight of the evidence. Before you begin, could I ask in regards to Section 12 of the 48-hour rule, does the 48-hour rule apply to documents and of records to be provided in advance of an evidence deposition setting that might precede the arbitration hearing by months? My interpretation of the 48-hour rule is opinions, that they have a reasonable amount of documents to determine what the opinions the doctor will be testifying to. And that's a distinction I'm not drawing here. I'm talking about the timeframe, the 48-hour rule. Is that 48 hours in advance of the arbitration hearing, or does it apply, as the commission appears to have found, to 48 hours in advance of an evidence deposition that might precede the arbitration hearing by a matter of days and months? So if I'm understanding your question correctly, you're asking if 48 hours before an evidence deposition of a doctor, we would need to provide all evidence that we would be admitting into evidence at the trial? Is that what you're saying? Does the 48-hour rule apply to evidence depositions, I'll say, as opposed to the arbitration hearing? I would say that the 48-hour rule does apply to evidence depositions, but within the scope of what the particular individual will be testifying to. So, for example, a doctor testifying to his IME report, obviously the IME report would be within the purview of the 48-hour rule. Does the case law say that? I believe it does. But, anyway, we are here today because the main issue here is that it is not against the manifesto of the evidence that the commission found no causal connection between the petitioner's job duties and bilateral hand conditions. As you heard, counsel brought up numerous red herring issues as far as exclusion of evidence. If you look at those multiple pieces of evidence, the deposition of Dr. Papierski, the second day of the deposition of Dr. Schiffman, they don't materially affect the outcome of the case. How do we know that? Well, because if you look at the deposition of Dr. Papierski, he confirms his opinions in the IME report, and he doesn't flip his opinion at all in the deposition. Now, there were obviously points raised on cross-examination, but those points raised on cross-examination, for example, of the job description, that he didn't review the job description, but neither did Dr. Schiffman. So both sides of the coin don't work there. Well, that's why I asked her. You know, ostensibly, he would be a witness for the employer, but he said he brought out certain points that tied some theories together. So he has an argument. Well, Dr. Schiffman didn't review any of those documents either. So, well, at the end of the day, the commission relied on the testimony of the petitioner, and they didn't believe that the petitioner testified to the force, fraction, and frequency of the job duties to prove a repetitive trauma case. So the commission is saying, I think you asked me about this as well, you're saying they relied on the claimant's own description of her job duties and activities. Is that correct? Yes. They considered what she testified to. Yes. Okay. And both doctors listened to what her own description of her job was, and in addition, Dr. Popierski was able to review an additional piece of evidence that gave him a better idea of what her job description was in this time motion study. Now, at the end of the day, like I said, those pieces of evidence being excluded only helps us. The deposition of Dr. Popierski, he confirms his opinions. The second day of deposition of Dr. Schiffman, he pretty much just testifies regarding distal radial joint instability. He never makes any causal opinions. He just testifies to different records and different facts regarding distal radial joint instability, but he doesn't provide any causal opinions to link it up. So, this is interesting. The commission sort of then also, to buttress this up with Popierski's testimony, they sort of engaged in their own harmless error analysis. Namely, they said, well, okay, even if we would have considered it, we would have reached the same result, right? Right. Is that normally done? What do you mean? They said, well, you know, they did their own harmless error analysis, are they coming forward? Well, I mean, obviously, yeah. I mean, it's harmless error to exclude these pieces of evidence because if these pieces of evidence are in play, the same result is going to occur, is what I'm arguing. And then just to briefly touch on the ex parte communications as well, there's no evidence in the record that the previous attorney, Brian Kaplan, and Dr. Schiffman had any ex parte communications. Did they have any communications at all? Did they have any communications at all? No. As far as the record goes, I don't know Dr. Schiffman, I don't know Brian Kaplan, I'm not sure if there were or not, but if you look at the record, they both deny having any type of ex parte communications. Dr. Schiffman was unsure if he's ever even met Brian Kaplan before. But you're saying, and that's why I asked you, this issue wasn't scored as a threat. Correct. Whether or not he had talked to anybody, and he never admitted having any communications. Correct. Both deny having communications. And that's what the commission found, and there's no evidence to the contrary in the transcript. So, I mean, as I sit here today, I'm requesting that you affirm the decision of the commission as it was not against the manifest wit of the evidence to find no cause of connection between petitioner's job duties and her bilateral hand conditions. Okay, thank you, counsel. Counsel, may I just check time, is it five minutes? You have five minutes. Thank you. I just want to make sure this gets on the record, something that just seems to have affected this case. One week prior to oral argument from the commission, I received a phone call from Commissioner Brennan's secretary. Commissioner Brennan was a neutral. Is any of this a record? Pardon? Is any of this that you're about to tell us a record? Yes. Okay. Yes. Where will we find that in the record? What you're about to say or talk about? Oh, is it? Should I get the PA? Well, the reason I ask the question is that we can't consider anything that's outside the record. So just make sure that what you're setting forth here is a record for us to consider. At the commission level. Yes, and that's why I want to explain how I – it is, Your Honor. So she just said he wants to meet with you and opposing counsel by now, new attorney Christina Fitch took over the position. Both of us asked purpose, he needs to speak to you. We arrived. We were immediately put in his office. The secretary brings a cart in with three volumes of transcripts. He pulls out one and shows Attorney Fitch the certification page. He says, is this your signature? She's like, yes. And from there, he proceeded at least three times to say, are you really sure this is your signature or did counsel meet for your signature? I'm like, what? Well, what happened, we reviewed the file at my office. I used calligraphy sharpies for Christina Attorney Fitch. As soon as my same sharpie passed through, she has a better signature. But to me, they have a close. In any event, fine, you confirm the signature. But it kept pressing. And there was a moment where I thought, why is this going on? And I immediately objected. I noticed purpose, demanded a court reporter. Court reporter not available for over an hour. And I asked him at the last status hearing, I said, does this have to do with when Attorney Kaplan gave Arbitrator Doherty his cell phone and put her on the phone with his secretary? And I objected. But in any event, he said no, and he proceeded. And I said, well, I'm concerned that this will affect my hearing next week because this is not going very well. When will we find all of this? You just indicated this was your last order of business. So I asked Commissioner Brennan, I said, I would like to put this on the record at the hearing. He's like, you're not allowed to. And we're talking about it now, but I did still make an objection on the record. So it was always submitted as part of the objection because I just ‑‑ So all of this colloquy beforehand was repeated on a record somewhere where we can find it? If there's a recording of the commission, I would call to see if there was a transcript. Because my understanding is it's a recorded argument. And I was told that I am not entitled to that information. So was it made just? But I just felt that it was inappropriate. And I asked if that was ever done with anyone else. He said no. I think that these are, as an attorney, I have a duty to the court, to my clients, to bring forth information like this, whether well received or not. But again, I mean, perhaps because we lost the case. But I can't help but think when I review the different opinions, too, that all was factored into the ultimate decision. And that's it. Thank you, Your Honor. Thank you, counsel, both for your arguments in this matter. We've taken our advisement and written this decision. Okay. Thank you. Thank you.